Day, J.
This action is for the marshaling of liens and for an order to sell lot No. 593, in the city of Findlay, Ohio, for the payment of such liens according to priority to be determined.
The defendants, Benjamin F. Burns and Mary C. Burns, are husband and wife, jointly owning and occupying as their homestead, lot 598. They have each filed answer in the case, waiving their homestead right, consenting that a sale of the hushand’s interest be made, and asking for five hundred dollars ($500), in lieu of homestead, and for the present worth of the wife’s inchoate right of dower in the husband’s undivided interest when sold. Their right to this relief is not questioned by any party to the action.
The litigation is between Andrew Bish, plaintiff, and defendants George W. Burns, and Joseph C. Reed. They each have judgment liens against the undivided interest of Benj. F. Burns in the real estate described, and the question is as to which of the liens is first.
The question of law involved in the decision of the matter in controversy is an exceedingly nice and interesting one. *286 There is substantially no dispute as to the facts in the case; they are practically agreed upon, and, so far as necessary to appear for a proper ¡understanding and decision of the question, are as follows: On May 25, 1891, Joseph C. Reed, by the consideration of the Court of Common Pleas of Hancock County, Ohio, obtained a judgment against Benj. F. Burns for $1,155.62, and costs. Reed was made a party defendant to an action pending in the same court to marshal the liens of various lien holders, and for an order to sell lot 598, and other lots and lands of Benj. F. Burns, to satisfy the said liens. Reed answered, setting up his judgment, etc., and the court found his judgment to be a lien, on June 4, 1891, .determined the order of its priority with reference to the other, then existing, liens, and ordered the sale of the lots and lands particularly described, other than lot 598, and directed the proceeds of the sale to be paid on the liens as marshaled according to the priorities as fixed. A sale was effected, and a part of Reed’s judgment was paid. As to lot 598, the court, in that proceeding, made this finding and order: “ Said lót No. 598 is not subject to sale for the payment of said liens of plaintiff or said Reed, so long as the same is so occupied as a homestead as aforesaid.” No other or further finding or order has been made concerning Reed’s judgment and lien, and no execution .was ever issued or levied on lot 598, or any other property of the judgment debtor.
The plaintiff Andrew Bish, and defendant George W. Burns, on May 26, 1892, each obtained judgment against Bejamin F. Burns, in the Court of Common Pleas of Hancock County, the first named for $253.29 and costs, and the last named for $1,275.71 and costs. On the same day, May 26, 1892, execution on each of said judgments was issued from the clerk’s office, and levied on lot 598.
On this state of facts Reed claims a lien on lot 598 prior to all others, which claim is disputed by Bish and Geo. W. Burns, who in turn insist that they are prior ; and *287 this is the single question presented for the determination of this court.
The existence, validity, extent and priority of judgment liens are matters purely legal, and dependent entirely on statutory provisions. By section 5375, Revised Statutes, the lands and tenements of a judgment debtor within the county where the judgment is entered, are bound for the satisfaction of the judgment from the first day of the term at which the judgment was rendered. The judgment becomes a lien on all the real estate in the county owned by the judgment debtor.
Other sections provide that the writ of execution may issue on a judgment, and be liens on the lands of the debtor. And by provision of section 5391, Revised Statutes, “ if upon a return to be made, it appears that two thirds (2-3) of the appraised value of the lands levied on is sufficient to satisfy the judgment and costs, the lien of the judgment shall be confined and limited to the particular land seized by the levy, and shall not operate as a lien against any other real property of the judgment debtor, to the prejudice of any other judgment creditor.” Again, it is provided by section 5415, Revised Statutes, that “No judgment on which execution is not issued and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of a debtor, to the prejudice of any other bona fide judgment creditor.”
It is conceded by all the parties, that by virtue of the express provisions of the various sections of the statutes, while a judgment in the common pleas court is a lien against all the real estate ofthejudgment debtor in the county,it maintains its priority for one year. Yet, to preserve and maintain that precedence beyond the year as to junior judgments, an execution must be issued and levied within the year, or other act done equivalent to the issuing and levying of an execution. In other words: a senior judgment, upon which an execution has not been issued and levied within the year, or other act *288 done equivalent thereto, loses its priority as against a junior judgment upon which an execution has been issued, and levied Avithin one year from its rendition. To this effect is the decision of the Supreme Court in the case of Schuee v. Ferguson, 3 Ohio Reports, 136. See also [Thompson v. Atherton, 6 Ohio Reports, 30.
If this statement of the laAV be correct, it Avould seem to settle the question here presented in favor of the claims of Bish and Geo. W. Burns, and adversely to the claim of Reed, unless there is something in the situation and the surroundings of Reed’s judgment lien Avhich is equivalent to the levying of an execution within the year; and that is the claim put forAvard on behalf of Mr. Reed, viz: That the finding and order of the court in the case to marshal the liens, declaring his judgment a lien, and fixing its position as to priority with other, then existing, liens, being within the year next after rendition of the judgment, was tantamount to, and had the same effect as would the issuing and levying of an execution.
Did the proceeding and order of June 4, 1891, have that significance ? is the question. The case of Dempsey v. Bush et al., 18 Ohio St., at page 376, is cited and relied on by counsel for Reed as holding that view, and decisive of the question. An examination of that case discloses the fact that it does not directly so decide. The proposition there held is, that in an action to marshal liens and for sale of land, a judgment creditor, who was properly made a party while his judgment was alive, would not lose his right to share in the distribution of the money arising from the sale by the fact that his judgment became dormant pending the action. , Substantially the decision is, that the fact of being a party to a pending action for the adjustment of priorities of liens, and the sale of particular real estate to satisfy them, prevents the judgment from becoming dormant, so far as that particular property is concerned. That dormancy is prevented, and the priority of the lien of the judgment is preserved as to other property of the judgment debtor, not before the court in the action, and *289 not appropriated for the payment of the various liens by the order of the court, is not decided.
The decision does not cover the question we have here, nor do we think the precise question has been decided by the Supreme Court. At least, in the limited time we have had to examine the matter we have not been able to find such a decision ; nor has our attention been directed to such a one by counsel.
The case, however, while not directly deciding the precise question involved in the case before us, has a bearing, and greatly aids us to the conclusion we reach. Ve think the fair inference to be drawn from the ease, is that the Supreme Court is of the opinion that the pendency of the action and the actual disposing of the property, by sale, on the Gottrt’s order, preserved the judgment from dormancy, and maintained its lien and right to be paid from the proceeds of the sale of the property so appropriated for that purpose.
The pendency of the action probably kept the judgment alive, and the actual seizure and sale of the property, by virtue of the order of sale made in the action, most likely gave the judgment the right to be satisfied from the proceeds of such sale.
The issuing of an execution, without a levy, has the effect to prevent a judgment from becoming dormant; the same effect, in fact, as has the pendency of an action to marshal liens, under the case cited. From this we conclude that while the issuing of an execution, or the pendency of an action to marshal liens, serves to prevent dormancy of a judgment, neither secures nor preserves a priority of lien to the judgment. Something more than the mere issuing of an execution, or pendency of an action, is required to be done to secure a lien and maintain its priority. There must be an actual seizing of the property — an actual appropriation of it to that particular purpose, by some process of the law, to accomplish the result.
The levying of an execution within a year, we have seen, *290 preserves and maintains the priority of a judgment lien. Inferentially, the Supreme Court has held, and such is our opintion, that the making of an order to sell, by the court, in a pending action to marshal liens and for sale of specified real estate has the same effect. It is the singling out — the setting apart and appropriating of particular property, by levy of execution or order of court, to sell it for the satisfaction of a particular judgment or judgments, that has the effect to fix and preserve the priorities of lien of such judgment or judgments.
John Poe, for Bish and George W. Burns.
Albert Zugmhwert, for Reed.
In the case at bar there was no execution levied within a 3-ear, and no order to sell lot No. 598,to pay Reed’s judgment, but there was an order expressly withdrawing and exempting it from sale. And the conclusion seems inevitable, that Reed’s judgment has lost its precedence, and become a junior lien to that of the judgment of Bish and Geo. W. Burns.
There will be a decree entered in accordance with this find-: ing, at the costs to defendant Reed. Cause remanded to the court of common pleas for execution.